**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

SALVADOR CERNA,

                Plaintiff,

v.

SANGER POLICE OFFICER BAUDELIO ORNELAS, et al.

                Defendants.

Case No. 1:24-cv-00498 JLT EPG

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

(Doc. 22)

Salvador Cerna alleges two police officers arrested him in violation of the Fourth Amendment. The officers move for summary judgment.  (Doc. 22.)  The evidence shows they had probable cause to suspect a criminal offense had occurred—a relatively minor offense that caused no injuries, but an offense nonetheless—and thus that they could arrest Cerna without violating the Fourth Amendment. The motion is **GRANTED**.

**UNDISPUTED FACTS**

This case is about a warrantless arrest in June 2022, which was based on the defendant officers' suspicion that Cerna had committed a domestic violence offense against his former spouse, Norma Lucia Martinez.  Cerna and Martinez would likely describe the events that led to this case differently, but the relevant facts are not disputed.

The first defendant officer, Baudelio Ornelas, took a report from Martinez in Spanish,

1

which he recorded on his body camera. (Doc. 28-5 at 2.) The camera recorded their conversation clearly, and the defense has filed and lodged both the video and an English-language transcript. (*Id.* at 2, 6–18.) As those records show, Martinez told Ornelas that Cerna had thrown a small plastic pill bottle at her during a recent argument about their teenage daughter. (*Id.* at 2, 16–22.) Martinez said that she was not hurt and that it had left no mark, but she said also that she had found Cerna's actions offensive and disrespectful. (*Id.* at 25–26.) They were going through a divorce at the time. (*Id.* at 13.)

Ornelas and the second defendant officer, Joel Banda-Tovar, then spoke with Cerna at a different location. (Docs. 28-4 at 2; 28-5 at 2.) Ornelas's body camera also recorded this conversation clearly. (*See id.* at 3.) Cerna confirmed that he and Martinez were going through a divorce and that he had been at her house. He explained that he had become concerned about their daughter's safety. He reported that their daughter had ingested some of Martinez's prescription medications. Cerna was worried that Martinez had not been keeping her medications in a safe place and that she did not appreciate how dangerous those medications could be. He told the officers that he and Martinez had yelled at each other and that he had tossed a pill bottle to her because he did not want to be near her. He said she had caught the bottle in her hands.

Ornelas arrested Cerna for a suspected violation of California Penal Code 243. (*Id.* at 3.) That section defines a battery against a spouse or former spouse as a misdemeanor punishable by a fine, incarceration, or both. Cal. Pen. Code § 243(e)(1). Ornelas explains his decision to arrest Cerna in a declaration:

> Policy 319 of the Sanger Police Department Policy Manual urges officers to make an arrest 'when there is probable cause to believe that a felony or misdemeanor domestic violence offense has been committed.' It further requires 'supervisor approval' for '[a]ny decision to not arrest an adult when there is probable cause to do so.' Policy 319 forbids officers from citing and releasing a person for a violation of California Penal Code section 243(e)(1).

(Doc. 28-5 at 3; *see also id.* at 35 (excerpting policy provisions).)

After Cerna was in handcuffs in the back of a patrol car, he told Ornelas that he had made an audio recording of his conversation with Martinez. The audio recording is also in the record, along with an English-language translation. (Docs. 30, 31.) Although the recording conflicts

2

with a few of Martinez's more specific allegations about what Cerna said, it is consistent with their respective summaries of the interaction: they argued about the pills and their daughter's safety, sometimes yelling.  The recording does not reveal whether or when anyone tossed or threw anything.

Prosecutors did not bring charges against Cerna.  (Doc. 30 at 11.)  Cerna then filed this lawsuit based on a claim for unlawful arrest in violation of 42 U.S.C. § 1983 and the Fourth Amendment.  (Doc. 22 at 3–4.)  The defendants move for summary judgment.  (Doc. 28.)  Cerna opposes the motion, and briefing is complete.  (Docs. 30, 35.)  The Court determined that a hearing was unnecessary.  (Doc. 34.)

**DISCUSSION**

The Court can grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case . *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in that party's favor. *Id.* at 255.

The material facts are not disputed.  The only question is whether the defendant officers are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The relevant law is the Fourth Amendment.  It "protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (alteration in original) (quoting U.S. Const., amend. IV).  "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *Id.*  An arrest without a warrant can be reasonable, and thus constitutional, if the officer had "probable cause." *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990).

"Probable cause 'is not a high bar.'" *Wesby*, 583 U.S. at 56 (quoting *Kaley v. United States*, 571 U. S. 320, 338 (2014)).  It requires "more than bare suspicion." *Brinegar v. United*

3

*States*, 338 U.S. 160, 175 (1949).  The officer must have "'reasonably trustworthy information' about the relevant 'facts and circumstances' that would suffice to permit a 'prudent person' to believe the suspect 'had committed or was committing an offense.'"  *Brye v. City of Stockton*, 808 F. Supp. 3d 1088, 1100 (E.D. Cal. Nov. 5, 2025) (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007)).  As this language implies, the standard is objective.  *See Edgerly v. City & County of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010).  The court examines "the events leading up to the arrest, and then decides whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."  *Wesby*, 583 U.S. at 56–57 (quoting *Maryland v. Pringle*, 540 U. S. 366, 371 (2003)).

The defendant officers argue they had probable cause to suspect a battery. (*See* Doc. 28-1 at 4–5).  "A battery is any willful and unlawful use of force or violence upon the person of another."  Cal. Pen. Code § 242.  The California Supreme Court has held that "the least touching may constitute battery."  *People v. Rocha*, 3 Cal. 3d 893, 899 n.12 (1971) (citation omitted).  "[F]orce against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark."  *Id.*  California courts have also held that a battery can occur when the force is applied indirectly, such as by throwing an object.  *See, e.g.*, *People v. Dealba*, 242 Cal. App. 4th 1142, 1150 (2015) (citing *People v. Duchon*, 165 Cal. App. 2d 690, 692–93 (1958) and Judicial Council of Cal., Crim. Jury Instr. No. 960).  The "willful" and "unlawful" requirements of section 242 are satisfied if the force or violence is "harmful or offensive."  *People v. Pinholster*, 1 Cal. 4th 865, 961 (1992), *disapproved of on other grounds by People v. Williams*, 49 Cal. 4th 405 (2010).  Finally, as noted, the Penal Code includes specific provisions for batteries against spouses and former spouses.  *See* Cal. Pen. Code § 243(e)(1).

By this broad definition, the officers had probable cause to suspect that a battery had occurred.  Martinez told Ornelas that Cerna had thrown a pill bottle toward her during a shouting match about their daughter, that the bottle had struck her, and that she had found his actions offensive and disrespectful even though it had not left a mark.  When the officers asked Cerna what had happened, he said that they had been yelling about their daughter and that he had "tossed" the pill bottle at Martinez.  This information would permit a reasonably prudent officer

4

to believe that Cerna had applied physical force indirectly in an offensive way, i.e., that he had committed the offense of battery under California law.  This and other courts have reached the same conclusion in several similar cases.  *See, e.g.*, *Palomares v. City of Arvin*, No. 21-01745, 2026 WL 124814, at *6 (E.D. Cal. Jan. 16, 2026); *Ramirez v. City of Glendale*, No. 19-4126, 2020 WL 7360276, at *4 (C.D. Cal. Dec. 14, 2020), *aff'd*, No. 21-55036, 2022 WL 726927 (9th Cir. Mar. 10, 2022); *Solomon v. City of S. Lake Tahoe*, No. 13-00115, 2014 WL 6389735, at *4 (E.D. Cal. Nov. 14, 2014); *Verdekel v. County of Los Angeles*, No. 06-1518, 2008 WL 11333939, at *6 (C.D. Cal. Aug. 13, 2008).

Cerna argues "the key facts are thoroughly disputed" and describes this case as a "classical" example of conflicting testimony.  (*See, e.g.*, Doc. 30 at 2.)  The dispute he references, however, is not about what the officers knew or the circumstances they faced, but rather what happened before they arrived.  If battery charges had ultimately been brought against Cerna, and if the case had gone to trial, a jury would probably have needed to decide whose account was more credible.  But this case is not about whether Cerna committed battery.  It is about whether the officers had probable cause to suspect that he had committed battery.  An officer can have probable cause to make an arrest even if that suspect is never convicted or charged, and even if "it appears that an actual conviction . . . might have been difficult without additional evidence." *Blankenhorn*, 485 F.3d at 474.  "Probable cause is a question of what was reasonable to conclude from the circumstances the officers faced and the information they had at the time of the arrest, not of what statutory provision the officers had in mind, and not whether their suspicions ultimately were borne out in charges and a conviction." *Brye*, 808 F. Supp. 3d at 1102.  It is similarly "irrelevant" whether Martinez wanted the officers to arrest Cerna or to press charges. *Ramirez*, 2020 WL 7360276, at *4.

Cerna also argues the officers acted unreasonably because they relied on the uncorroborated claims of a citizen witness.  (*See* Doc. 30 at 6.)  It is true that "officers may not solely rely on the claim of a citizen witness that she was the victim of a crime, but must independently investigate the basis of the witness's knowledge or interview other witnesses." *Hopkins v. Bonvicino*, 573 F.3d 752, 767 (9th Cir. 2009) (alteration omitted) (quoting *Arpin v.*

*Santa Calara Valley Transp. Agency*, 2612 F.3d 912, 915 (9th Cir. 2001)); *see also Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991)).  But the officers did not rely on Martinez's report alone.  They interviewed Cerna himself, and his account largely matched hers: they were angry and were yelling at one another about their daughter and the pills; he had tossed or thrown or lobbed the pill bottle at her; it had made contact with some part of her body; and Martinez found his actions offensive and disrespectful.

**CONCLUSION**

None of the discussion above should "minimize the serious effect this unfortunate incident must have had upon" Cerna.  *John v. City of El Monte*, 515 F.3d 936, 942 (9th Cir. 2008).  "That being said, however, the probable cause inquiry is an objective one: whether the information [the officers] had when [they] made the arrest could have led a reasonable officer to believe that [Cerna] had committed an offense against [Martinez]." *Id.*  For the reasons above, the answer is "yes."  The motion for summary judgment (Doc. 28) is **GRANTED**.  The Clerk's Office is instructed to enter judgment for the defendants and close the case.

IT IS SO ORDERED.

Dated:   **May 19, 2026**

UNITED STATES DISTRICT JUDGE